# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3188 | DATE | 6/26/2003 |
| CASE TITLE | Steven Swanson et al vs. James W. Keen, M.D. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: It is ordered that defendants' post-trial motion for a new trial or remittitur is denied. [72-1,2]

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 27 2003 | 77 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| | | 6/26/2003 | |
| AMM | courtroom deputy's initials | 03 JUN 26 PM 5:23 | date mailed notice |
| | | Date/time received in central Clerk's Office | AMM mailing deputy initials |

00-3188.001                                                  June 26, 2003

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

STEVEN SWANSON, a minor, by )
his next of friends, CLYDE )
SWANSON and RITA SWANSON, his )
parents, )
)
   Plaintiffs/Counter-defendants, )
)
   v. ) No. 00 C 3188
)
JAMES W. KEEN, M.D., individually, )
and DELNOR-COMMUNITY HOSPITAL, and )
VALLEY EMERGENCY CARE MANAGEMENT, )
LTD., )
)
   Defendants/Counter-plaintiffs. )

DOCKETED
JUN 2 7 2003

## MEMORANDUM OPINION AND ORDER

Defendants have filed a post-trial motion, arguing that they are entitled to a new trial on a number of grounds. We will comment on four of them. The others require no discussion.

### Dr. Giblin's Personal Practices

We believe it was appropriate for Dr. Giblin to be cross-examined about his own practices because the questions were relevant to the testimony he gave on the defendants' direct examination. By asking Dr. Giblin to opine about the adequacy of the defendant Keen's examination and treatment of plaintiff, the defendants opened up the subject of standard of care. We see no difference between asking Dr. Giblin about the standard or care and

asking him about his own personal practices, because it was apparent that he believed they were one and the same. There was no prejudice to the defendants in this testimony.

## Testimony Concerning the Standard of Care for a Nurse

We disagree with defendant Delnor Hospital that it was error to allow Dr. Smolev, one of plaintiff's experts, to testify that Cheryl Lorenzin failed to take an adequate medical history concerning the plaintiff. Defendant's argument is that a physician is not competent to testify to the standard of care for nurses. It depends on the particular nursing practice in question. The purpose of taking a medical history is to provide the physician with information necessary for diagnosis and treatment, and surely a physician is an appropriate witness to testify about the kinds of information a physician needs to know about a patient. The case of Wingo v. Rockford Memorial Hospital, 686 N.E.2d 722, 729 (Ill. App. Ct. 1997), cited by plaintiff, is on point.

Secondly, both of the nurses who testified for defendant agreed that the nursing standard of care required the taking of a complete and accurate medical history. There was no disagreement about what constitutes the standard of care. The jury was capable of determining whether that standard was met by nurse Lorenzin's history which referred to "appe of the testicle" and stopped there, with no explanation or clarification. In fact, we think it was obvious that further information should have been obtained from

plaintiff's mother by nurse Lorenzin. Had the mother been asked, she would have provided important information about the previous episode of testicular torsion in Pennsylvania. The inadequacy of nurse Lorenzin's history was well within the capacity of a lay jury to determine, and there was no unfair prejudice to the hospital in Dr. Smolev's testimony.

### Proximate Cause

Defendants argue that the evidence failed to show a causal relationship between any negligence on their part and plaintiff's injury because "no competent expert testimony was introduced that a radiologic study performed during the morning visit would have shown a testicular torsion." (Brief in Support of Defendants' Post-trial Motion at 9.) Defendants take too narrow a view of the matter. There is ample circumstantial evidence, viewed in light of the expert testimony, that Steven was in testicular torsion at the time of his morning visit to the emergency room.

First, Steven was in severe abdominal pain. The undisputed medical testimony was that in a significant percentage of testicular torsion cases, the only symptom is abdominal pain. While the pain does not, of itself, prove that there was torsion, it is certainly consistent with the presence of torsion.

Second, there was no other convincing explanation for the presence of the abdominal pain. Dr. Keen's diagnosis of "stomach

flu" was obviously mistaken, yet it was the only explanation offered by the defendants.

Third, no witness testified that anything about Steven's condition upon presentation at the emergency room <u>ruled out</u> testicular torsion.

Fourth, Dr. Keen did not touch Steven's scrotum until the end of the examination and, by that time, whatever tenderness there might have been without pain medication could have been masked by the pain medication Steven was given.

Fifth, later that day the testicle did in fact turn necrotic as a result of torsion. The connection between that necrosis and the morning abdominal pain is too obvious to ignore.

We believe the jury could reasonably have inferred that Steven was suffering from testicular torsion during the morning session at the emergency room and that proper diagnostic procedures undertaken at that time would have disclosed it.

## Remittitur

The verdict in this case is large, and it is not surprising that defendants believe it should be reduced. However, to vacate the verdict we would have to determine that it is "'monstrously excessive' or that there was no rational connection between the evidence on damages and the verdict." <u>Frazier v. Norfolk & W. Ry. Co.</u>, 996 F.2d 922, 925 (7th Cir. 1993). We are unable to say that

with any assurance. The verdict, although large, does not "shock [ ] our judicial conscience." Id. at 926.

Defendants take particular exception to the $370,000 award for disfigurement. They argue that the disfigurement was simply not serious enough to justify such an amount. This is a reasonable point of view, but we think the question is also one as to which reasonable minds can differ. This was an intelligent and attentive jury. We are being asked to substitute some different amount for the amount at which they arrived. We do not know what basis we could use for doing so. Significantly, defense counsel did not suggest any amount in his final argument to the jury, although plaintiff's counsel did. Even now, defendants do not propose a particular figure. They simply ask for a remittitur, leaving it to us to decide how much to remit. The reason for this, of course, is that defendants do not know what to suggest, any more than they knew at the time of the trial. They believe that the award is too much, but they are unable to explain why and to what extent it is too much. It is not the function of the court to make their argument for them.

One of the reasons the verdict is so large is the extreme youth of the plaintiff. According to the mortality table in evidence, he is likely to live another 65 years. (Plaintiff's Instruction No. 8). This was undoubtedly a major factor in the jury's analysis.

Defendants do specifically propose that the $30,000 awarded for future medical expenses be reduced to $10,000, because that was the amount Dr. Louton gave as the cost of a testicular implant. But, as we recall, this would be the present cost. Steven is too young to have the procedure now, and if he does have it, it will be many years from now. The continuing inflation in medical costs has been truly astounding, and this is a matter of common knowledge. The jury may well have concluded that $30,000 is a reasonable allowance for what the cost will be by the time Steven is ready to have the implant.

Defendants' request for a remittitur is denied.

### Conclusion

Defendants' post-trial motion for a new trial or remittitur is denied.

DATED: June 26, 2003

ENTER:

John F. Grady, United States District Judge